```
         UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF NEW YORK
         ------------------------------------------x
         INTERNATIONAL BUSINESS MACHINES CORPORATION,

                        Plaintiff,

              v.                        18 Civ. 1210(VB)

                                        CONFERENCE

         LINDSAY RAE MCINTYRE,

                        Defendant.
         ----------------------------------x

                                        United States Courthouse
                                        White Plains, N.Y.
                                        February 12, 2018




         Before:   THE HONORABLE VINCENT L. BRICCETTI, District Judge



                              APPEARANCES

         PAUL, WEISS, RIFKIND, WHARTON & GARRISON, LLP
              Attorneys for Plaintiff
         ROBERT A. ATKINS
         PIETRO SIGNORACCI
         LIZA M. VELAZQUEZ
         MOZIANIO (TREY) S. RELIFORD


         ORRICK, HERRINGTON & SUTCLIFFE, LLP
              Attorneys for Defendant
         MICHAEL DELIKAT
         JAMES H. McQUADE


         MORGAN, LEWIS & BOUKIUS, LLP
              Attorneys for Defendant
         SARAH E. BOUCHARD
```

1              THE DEPUTY CLERK:  In the matter of International
2    Business Machines Corporation against Lindsay Rae McIntyre.
3              Will counsel please note their appearance for the
4    record.
5              MR. ATKINS:  Your Honor, Robert Atkins from Paul,
6    Weiss, representing the plaintiff, IBM.
7              THE COURT:  Just identify your co-counsel for the
8    record.
9              MR. ATKINS:  I will.
10             My partner, Liza Velazquez; my colleague, Pietro
11   Signoracci; and my colleague, Trey Reliford.
12             THE COURT:  Good morning.  Or good afternoon,
13   everybody.
14             MR. DELIKAT:  And for Lindsay Rae McIntyre, Mike
15   Delikat, Orrick, Herringon & Sutcliffe.  With me is my partner,
16   James McQuade.  And with us, also, who hopefully will ECF file
17   her application pro hac vice, is Sarah Bouchard from the
18   Morgan, Lewis firm.
19             THE COURT:  Welcome to all of you.
20             And is your client here as well?  That's this lady in
21   the back here?
22             MR. DELIKAT:  Yes, yes.
23             THE COURT:  That's Ms. McIntyre?
24             MR. DELIKAT:  That's Ms. McIntyre.
25             THE COURT:  Okay.  Have a seat, everybody.

1          Well, I've just had a conference with the lawyers in
2  my chambers about how to proceed in this case, and I just want
3  to quickly summarize where we are on the record.
4          I am going to sign the proposed order to show cause,
5  including a TRO, with a slight modification which I'll describe
6  in one second.
7          Having reviewed the papers submitted in support of
8  the application as well as defense counsel's opposition, I
9  think that a TRO, under these circumstances, is appropriate.
10  After all, the defendant, Ms. McIntyre, the former employee of
11  IBM, did sign a noncompete agreement, and it says that she
12  can't work in a job that's in competition with her job at IBM,
13  and there's certainly some reason to believe that the job that
14  she's about to take or wants to take with Microsoft is
15  essentially the same job as the job that she had at IBM, and so
16  arguably it is a breach of the agreement to do that.  Plus,
17  there's no doubt in my mind that there is at least some
18  sensitive and confidential information that she possesses and
19  that, even if she stipulates, as she has pursuant to the
20  agreement itself, that she will not disclose any such
21  information, there is a risk that, because she's taking
22  essentially the same job at Microsoft, there's a risk of
23  disclosure of this confidential information, whether or not
24  it's intentional, and even if it's not intentional.
25          So I think that there is a basis for a finding, at

1    least for now, anyway, both that there's a likelihood of
2    success on the merits and that there is a likelihood of
3    irreparable harm if not temporarily enjoined.
4              As far as irreparable harm is concerned, we start
5    with the fact that the defendant, Ms. McIntyre, has agreed in
6    writing that disclosure of confidential information to a
7    competitor -- Microsoft is certainly a competitor -- would
8    cause irreparable injury and that an injunction is the
9    appropriate remedy.
10             Now, this is not conclusive.  I said that to the
11   lawyers in my chambers earlier.  Every case turns on its own
12   facts.  But that is a fact.  That's one of the facts that are
13   relevant here, that is relevant here; namely, that she signed
14   an agreement in which she stipulated or she agreed that if she
15   takes a job like this, that it would create irreparable harm
16   for which an injunction is appropriate.
17             Also, in this area, generally speaking, if IBM were
18   able to prove at a preliminary injunction hearing both that she
19   is in possession of highly confidential trade secret
20   information and that there is a risk of disclosure, it seems to
21   me that, in these kinds of cases, injunctions are appropriate,
22   again, at least a temporary injunction, because it would be
23   very difficult, if not impossible, for IBM to obtain some sort
24   of money damages remedy.  It's just the disclosure and the
25   impact on IBM would be too subtle and too nuanced to be able to

1    really quantify in damages.

2            So, anyway, the point is that I am going to go ahead

3    and sign this.  However, I'm making one addition to the order,

4    which was suggested by counsel.  There was discussion back and

5    forth about this, but, in any event, I've agreed to add the

6    following clause.  This is on the bottom of page 2, the

7    paragraph starting with the word "ordered" in clause one.  It

8    says "working at or providing any services for Microsoft," and

9    I'm adding the following:  "Provided, however, that

10   Ms. McIntyre may be placed on the payroll of Microsoft for

11   payroll and benefits purposes only."  In other words, she can't

12   work at Microsoft, but she can be paid by Microsoft while this

13   matter is pending, at least while the TRO is pending.  And I'm

14   advised by counsel for Ms. McIntyre that Microsoft will pay her

15   during this period, which I think is a good thing.

16           So it now reads:  "Ordered that defendant Lindsay Rae

17   McIntyre is temporarily enjoined and restrained until the

18   hearing and determination of plaintiff's motion for a

19   preliminary injunction from, one, working at or providing any

20   services for Microsoft, provided, however, that Ms. McIntyre

21   may be placed on the payroll of Microsoft for payroll and

22   benefits purposes only."  And then the rest of that paragraph

23   remains the same, that it also prohibits Ms. McIntyre from

24   soliciting any customer of IBM with which Ms. McIntyre was

25   involved as part of her job responsibilities at IBM during the

1  last year of employment at IBM.  It also prohibits her from
2  contacting any current employees of IBM for the purpose of
3  influencing them to leave IBM.  And, finally, it prevents her
4  from retaining, using or disclosing IBM confidential or
5  proprietary information.
6          Now, I have strongly encouraged the parties to settle
7  this case on terms that are acceptable to both sides.  Probably
8  not terms that each side would prefer, but any good settlement
9  requires a comprise.  It requires a certain amount of
10 unhappiness on both sides.  And I certainly have strongly urged
11 counsel to try and find that comprise that works for both
12 sides.
13         I've been advised by counsel directly that they will
14 negotiate in good faith in an effort to find a middle ground
15 here that is acceptable to both sides and a settlement to both
16 sides, which, at the end of the day, would allow Ms. McIntyre
17 to join Microsoft for all purposes; not just for payroll
18 purposes, but to actually work there.  The details of that, of
19 course, remain to be negotiated.  I am strongly urging and I am
20 also hopeful that counsel will be able to accomplish that.
21         In order to facilitate that or to encourage that kind
22 of discussion in the short term and cognizant of the fact that
23 this TRO presumes, I guess, that Microsoft is going to be
24 paying Ms. McIntyre, but not actually receiving any work from
25 Ms. McIntyre in the short term, I think we need to move this

1   forward quickly as a matter of fairness to everybody.

2            For what it's worth, Ms. McIntyre, it's not a bad
3   result for you in the sense that I don't know what your
4   personal circumstances are, but my guess is that you would like
5   to be working and like to be paid for working.  And you're
6   going to be paid, at least in the short term, so that's a good
7   thing for you.

8            But everybody is ordered to be back here in this
9   courtroom on February 22nd, which is a Thursday, I think
10  Thursday of next week, at 12 noon.  The only reason why you
11  wouldn't be back here by then is if you filed a stipulation of
12  dismissal or discontinuance prior to that time and date, but
13  anything short of that, even if you are close to settling --
14  well, anything short of a stipulation of discontinuance being
15  filed prior to noon on February 22nd means that you have to be
16  here on that day and at that time.

17           In the meantime, there's a stay of all discovery.  So
18  there will be no discovery conducted between now and February
19  22nd.  If the case is not settled then, on February 22nd, we'll
20  talk further about where the case is going, including discovery
21  or anything else that relates to the management of this case,
22  or the preparation of this case, for a preliminary injunction
23  hearing.  And I've scheduled a preliminary injunction hearing
24  to commence on March 12th, 2018 at 11 a.m.  I've been advised
25  by counsel that -- now I don't remember.

1            Did you say three days or four days?  How long did
2    you think this would take, Mr. Atkins, if we have it?  Which
3    I'm hoping we won't have it, but if we do.
4            MR. ATKINS:  Three days.
5            THE COURT:  Do you agree with that?
6            MR. DELIKAT:  Yes, your Honor.
7            THE COURT:  All right.
8            So I advised counsel that I have a very busy trial
9    schedule coming up.  For what it's worth, I have approximately
10   300 pending civil cases.  This is one of them.  And all of the
11   people involved in those other cases expect me to pay attention
12   to their cases, as well, so I'm doing the best I can in those
13   circumstances.  If I didn't have other cases, I could devote
14   full attention to this case, but I do have other cases.  And
15   that, by the way, doesn't even include criminal cases, of which
16   I have about 50.
17           All right.  So I'm going to have this order to show
18   cause docketed.
19           Is there anything else we need to do today,
20   Mr. Atkins?
21           MR. ATKINS:  No, your Honor.  Thank you.
22           THE COURT:  Mr. Delikat?
23           MR. DELIKAT:  No, your Honor.
24           THE COURT:  All right.
25           I appreciate everyone being here.  And have a good

1  day.  And I was going to say I'll see you on the 22nd, but,
2  actually, I hope I won't see you on the 22nd.  I'm not being
3  mean to anybody, but that would mean that, of course, the case
4  got settled by then, so that's what I'm hoping will happen.
5          Have a good day.
6
7                              - - - -

CHRISTINA M. ARENDS-DIECK, RPR, RMR, CRR
(914)390-4103